UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  21-80609-CIV-DIMITROULEAS

**NELSON FERNANDEZ**,

     Plaintiff,

vs.

**BRUNO NORTHFLEET, INC., d/b/a
NORTHFLEET, a Florida for-profit
corporation,**

     Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, responds to Defendant

BRUNO NORTHFLEET, INC.'s Motion for Rule 11 Sanctions Pertaining to the Plaintiff's

Complaint and Amended Complaint [ECF No. 20] as follows:

**I.      Introduction.**

Plaintiff, a visually disabled person, filed his original Complaint in this case on March 26,

2021 [ECF No. 1], asserting two claims:  (1) for violation of Title III of the Americans With

Disabilities Act, 42 U.S.C. §§12181-12189, as amended ("ADA"), in connection with Defendant's

operation of its website; and (2) for common law trespass for the automatic and unconsented

placement of cookies and other information tracking software on his laptop computer when he

visited the website.  On April 7, 2021, the Eleventh Circuit Court of Appeals handed down its

decision in *Gill v. Winn-Dixie Stores, Inc.*,  993 F.3d 1266 (11th Cir. 2021), in which a majority of

the Court, with a strong dissent by Judge Pryor, reversed the District Court's decision that Winn-

Dixie's "limited use" website at issue in the case did not violate the ADA.  In reaching its decision

the majority rejected the "nexus" theory of ADA liability for public accommodation websites, ruled that websites were not in and of themselves places of public accommodation covered by the ADA, and that for there to be a violation of the ADA in connection with the operation of a website, the website must serve as an "intangible barrier" to the plaintiff's ability to "to communicate with, or to access the services offered in, the physical stores."  993 F.3d at 1280.[1]

Relying primarily on the *Gil* majority decision, Defendant filed a Motion to Dismiss the Complaint on April 26, 2021 [ECF No. 9].  In response to the Motion, Plaintiff filed an Amended Complaint [ECF No. 15] in which he reasserted his Title III ADA claim with allegations in line with the scope and language of the *Gil* majority's decision, re-alleged the common law trespass claim, and asserted a new claim for disability discrimination under Section 504 of the federal Rehabilitation Act of 1973, 29 U.S.C. §794, et seq. ("Rehab Act"), inasmuch as Defendant had been, and still is, the recipient of federal financial assistance.  As a result of the filing of the Amended Complaint, this Court denied as moot Defendant's Motion to Dismiss the original Complaint by Order dated May 18, 2021 [ECF No. 16].

In response to the Amended Complaint, Defendant filed another Motion to Dismiss [ECF No. 17], which to date has been fully briefed and is awaiting this Court's decision.  Significantly, in his response, Plaintiff agreed not to pursue his common law trespass claim, argued that the *Gil*

---

[1] It is significant to note, especially in light of the seriousness of Defendant's Motion for Sanctions, that the *Gil* decision is far from over and final and is being subjected to further Eleventh Circuit scrutiny.  Shortly after the decision was issued, the Eleventh Circuit entered an Order to withhold issuance of the mandate.  *See Gil v. Winn-Dixie Stores, Inc.*, No. 17-13467, Order dated April 9, 2021 ("A judge of this Court withholds issuance of the mandate in this appeal.").  In addition, the Court thereafter issued an Order directing Winn-Dixie to respond to the plaintiff/appellee's petition for rehearing *en banc* and petition for panel rehearing, in particular the argument that the majority's decision was rendered moot and thus should be vacated because it was issued after the underlying injunction issued in the case, which Winn-Dixie challenged on appeal, had already expired by its terms. *Id.*, Order dated May 20, 2021.  Winn-Dixie submitted its response yet no decision to date has issued from the Court.

decision was distinguishable as Defendant's website at issue here was not of "limited use" and had a significant e-commerce component as it acted as a point-of-sale for Defendant's brick-and-mortar stores, and argued that the Rehab Act claim was viable as Defendant was a recipient of federal financial assistance as a whole and thus was required to have all of its operations, programs, and activities, including its website, accessible to the disabled. *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 18].  In support of his substantive arguments, Plaintiff provided not only specific references to his Amended Complaint's factual and legal allegations, but also supported his legal arguments with applicable case law, legal commentary from other sources interpreting the limited scope of the *Gil* decision, and U.S. Government guidance on the application of the Rehab Act to the websites of federal funding recipients. *Id.*

Instead of waiting for this Court to issue its ruling on the pending Motion to Dismiss, Defendant now has filed the instant Motion for Rule 11 Sanctions in which it cavalierly and in conclusory fashion re-argues its ADA arguments from its Motion to Dismiss, references "new precedent" from the "Eleventh Circuit" without any case cite (apparently referring to *Gil*), and concludes, without support, that Plaintiff opted to not pursue his common law trespass claim because it was "frivolous". *See* Defendant's Motion for Rule 11 Sanctions, pp. 3-4.   Defendant in its Motion for Rule 11 Sanctions also makes the following inflammatory and wholly unsupported allegation at paragraph 13 in a blatant effort to malign Plaintiff and his counsel:

> "13.  NELSON and his counsel have brought the same Worded Complaint against 107 other businesses. ***NELSON and his attorney are continuously bringing frivolous, baseless claims, which needlessly increase the cost of litigation and are brought for an improper purpose.***"  (ECF No. 20 at p. 4.)

As demonstrated below, Defendant's Motion for Rule 11 Sanctions is itself improper and unsupported by law or fact and is contrary to the spirit and intent of Rule 11, which should not "be

prepared to emphasize the merits of a party's position ... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 (Advisory Committee Notes, 1993 Amendment).  The Motion should be denied.

## II.    Argument.

### A.  Standard for Rule 11 Sanctions.

Under Federal Rule of Civil Procedure 11, a court has the discretion to award sanctions where a party or attorney has signed and filed a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) is filed in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citations omitted); *see* Fed. R. Civ. P. 11(b).  The Eleventh Circuit has developed a two-step inquiry for Rule 11 sanctions that examines (1) whether the claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that the claims were frivolous. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).  The first prong of this inquiry is an objective standard for assessing conduct, which takes into account the "reasonableness under the circumstances" and "what was reasonable to believe at the time" the representation to the Court was made. *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992); *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987).

Rule 11 thus imposes an obligation on an attorney or party to "make a reasonable inquiry into both the legal and factual basis of a claim ...." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996).  In this regard, courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified. *Kaplan v. Daimlerchrysler*, 331 F.3d 1241, 1255 (11th Cir. 2003).  At all times, the burden of proof as to

4

whether a party and/or his attorney have violated Rule 11 rests exclusively on the movant. *Emergency Recovery, Inc. v. Hufnagle*, No. 8:19-cv-329-T-24JSS, 2019 WL 9089594 at *1 (M.D. Fla. June 12, 2019). Significantly, "any doubts as to whether Rule 11 has been violated should be resolved in favor of the party who signed the pleading." *Miller v. Relationserve, Inc.,* No. 05-61944-CIV, 2006 WL 5849318 at *9 (S.D. Fla. Dec. 1, 2006). *See also Great Lakes Reinsurance (UK) PLC v. Blue Sea, LLC*, No. 6:05-cv-1660-Orl-22KRS, 2006 WL 2471522 (M.D. Fla. Aug. 24, 2006). Moreover, "[s]anctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (internal quotation marks and citations omitted).

Applying these standards to the instant case and as shown below, Defendant clearly has not met its burden to demonstrate that Plaintiff's claims asserted in the Amended Complaint are objectively frivolous to warrant the imposition of Rule 11 sanctions against either Plaintiff or his counsel. Indeed, it is Defendant and its counsel who have knowingly made spurious and unsupported accusations against Plaintiff and his counsel in the Motion for Sanctions such that the Motion for Sanctions should itself be deemed frivolous, justifying an award of attorney's fees and costs in favor of Plaintiff for defending against the Motion as provided by Rule 11(c)(2). Defendant's Motion for Rule 11 Sanctions thus should be denied, and Plaintiff awarded his reasonable attorney's fees in defending the Motion as the prevailing party.

### B. The Amended Complaint claims are not objectively frivolous as they set forth valid and justifiable ADA and Rehab Act claims against Defendant.

As Plaintiff more fully argued in his Response to Defendant's yet undecided Motion to Dismiss [ECF No. 18], the majority opinion in *Gil* was limited to the "unique facts" that existed in that case and the "limited use" nature of the Winn-Dixie website that was at issue. *See Gil*, 993

F.3d at 1281, n. 19 (disagreeing with the dissent because of the "unique facts of the case" before the court). The *Gil* majority specifically distinguished the Winn-Dixie "limited use website" from those company websites that have an e-commerce component, and which act as a point of sale for the company's goods available in its brick-and-mortar store locations. *Id.,* 993 F.3d at 1279 (distinguishing earlier decision in *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), because "[i]n the case at hand, … Winn-Dixie's **limited use website**, although inaccessible by individuals who are visually disabled, does not function as an intangible barrier to an individual with a visual disability accessing the goods, services, privileges, or advantages of Winn-Dixie's physical stores (the operative place of public accommodation). **Specifically, Winn-Dixie's website has only limited functionality. Most importantly, it is not a point of sale; all purchases must occur at the store. Further, all interactions with Winn-Dixie which can be (although need not be) initiated on the website must be completed in-store: prescription pick-ups and redemption of coupons.**") (emphasis supplied). *See also, Mahlberg v. Pinch-A-Penny Inc.*, No. 6:21-cv-143-GAP-DCI, 2021 WL 2942675 at *3 (M.D. Fla. Apr. 20, 2021) (recognizing that in *Gil*, "[t]he Court … indicated that for websites, an important factor is whether a website acts as a 'point of sale' for a business's physical store.").

In contrast, as Plaintiff has clearly pled in his Amended Complaint here, Defendant's website has a significant e-commerce component that allows for the purchase of Defendant's merchandise through the website and thus acts as a point of sale for Defendant's merchandise available form and in its network of physical stores. [Amended Complaint at ¶¶12, 14, 15, 16, and 57]. In addition, Defendant's website here, unlike the Winn-Dixie website, also allows users to secure online financing for purchases made either online or in the physical stores and to access an e-mailer to secure exclusive online coupons and discounts for use both online and in the physical

stores. [*Id.* at ¶¶14, 15, 16, and 57].   As the *Gil* holding was limited to its "unique facts" and the "limited use" Winn-Dixie website at issue there, which had no e-commerce component whatsoever, *Gil,* regardless of its outcome, does not preclude Plaintiff from bringing and pursuing the instant ADA action in Count I of the Amended Complaint, which involves a fully functioning, e-commerce website acting as an extension and a necessary privilege, service, and advantage of Defendant's brick-and-mortar stores. *See also Gil*, 993 F.3d at 1283 (factually distinguishing Ninth Circuit's decision in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir.), *cert. denied*, ___ U.S.___, 140 S. Ct. 122, 205 L.Ed.2d 41 (2019), because Domino's made pizza sales through its website and app, whereas Winn-Dixie made no sales of its products on its site: "The *Robles* plaintiffs complained they were denied access to the goods and services of the physical stores through the website. **In contrast, in this case, Winn-Dixie's website does not provide any direct sales of goods or services or impede access to the goods and services offered in the physical stores.**") (emphasis supplied).[2]

---

[2] Of significance here (and as Plaintiff also argued in his Response to the Motion to Dismiss), Plaintiff's interpretation of *Gil* and its limited scope – and the validity of the ADA claim in the Amended Complaint -- finds support in the post-*Gil* commentary of various blog commentators from national law firms that regularly defend Title III ADA website cases nationwide.   These commentators uniformly recognized that the *Gil* majority decision still leaves open the question of whether company websites with a significant e-commerce component (i.e., the ability to purchase company services and products online as well as in the physical stores) are subject to the ADA's anti-discrimination provisions. *See, e.g.*, Stein, Joshua A. & Blank, Shira M., Epstein Becker Green, "The Eleventh Circuit Finally Breaks its Silence on Website Accessibility - But Was its Decision Worth the Wait?", https://www.workforcebulletin.com/2021/04/08/the-eleventh-circuit-finally-breaks-its-silence-on-website-accessibility-but-was-its-decision-worth-the-wait (April 8, 2021) ("Although the majority held that Winn-Dixie did not violate Title III by maintaining an inaccessible website, it took great care to mention more than once that the fact that the website did not contain an e-commerce component linked to the store was a factor in reaching its decision."); Vu, Minh N. & Launey, Kristina M., Seyfarth Shaw, "United States: Eleventh Circuit Says Winn Dixie's Inaccessible Website Does Not Violate the ADA", https://www.adatitleiii.com/2021/04/eleventh-circuit-says-winn-dixies-inaccessible-website-does-not-violate-the-ada (April 9, 2021) ("The Court acknowledged that Gil could state a claim for a violation of the ADA if he could show that the website constituted an 'intangible barrier' to

In addition, in the Amended Complaint Plaintiff cleaned up and clarified the factual allegations of his ADA claim in light of *Gil* to eliminate any references to a "nexus" between he website and the stores, which the *Gil* majority found inapplicable, and to specifically allege that the website was and is a "necessary" extension, service, privilege, and advantage of Defendant's physical stores as it enables Plaintiff and other blind and visually disabled persons to fully access, purchase, and secure financing online of Defendant's merchandise available for purchase from its network of physical stores. [Amended Complaint at ¶¶12, 14, 15, 16, and 57]. In his amended Count I in the Amended Complaint, Plaintiff thus alleged facts that distinguish Defendant's website at issue here from the "limited use" Winn-Dixie website that was at issue in *Gil. See also Sarwar v. OMKAR RAJ 2017, LLC,* No. 3:20-CV-99 (CDL), 2021 WL 1654850 at *7, n. 5 (M.D. Ga. Apr. 15, 2021) (acknowledging in *dicta* that plaintiff would likely need to allege that a regulatory-compliant website "is **necessary** to enjoy Defendant's services.") (emphasis in original).

Accordingly, Plaintiff's ADA claim, as pled in Count I of the Amended Complaint, has both legal and factual support from both the language of the *Gil* majority decision, which limited the decision to its "unique facts" and distinguished those websites, such as Defendant's here, that act as a point of sale for merchandise and services available in the brick-and-mortar stores, and the various post-*Gil* interpretations from district courts and legal commentators. Plaintiff's ADA claim thus has clearly been brought in good faith and, given that it has both legal and factual

---

his access to the goods, services, privileges, or advantages of Winn Dixie's physical stores, but found that Winn Dixie's website did not present such a barrier. The Court based this conclusion on two key facts: (1) No goods or services could be purchased on the website; and (2) 'all interactions with Winn-Dixie which can be (although need not be) initiated on the website must be completed in-store: prescription pick-ups and redemption of coupons.'"). These interpretations are supportive of Plaintiff's ADA claim as pled in Count I of the Amended Complaint, thus further demonstrating that the claim is not objectively frivolous as required by Rule 11.

support, cannot and should not be viewed as objectively frivolous to warrant the imposition of Rule 11 sanctions against Plaintiff or his counsel.

As for Plaintiff's Rehab Act claim in Count II of the Amended Complaint, Defendant presents no argument whatsoever in its Motion for Rule 11 Sanctions that the Rehab Act claim is either factually or legally frivolous.  By leaving out any argument in its Motion directed to the Rehab Act claim, Defendant thus has implicitly conceded that the claim is not frivolous and does not warrant sanctions of any kind for its being brought.

Accordingly, as Plaintiff's current ADA and Rehab Act claims are neither objectively frivolous nor brought in bad faith or for an improper purpose, Defendant's Motion for Rule 11 Sanctions should be denied.

### C. Alternatively, if the Court does not deny Defendant's Motion outright, the Motion is at best premature and improper at this stage, and the Court should deny the Motion without prejudice until the end of the case.

It is well established that "Rule 11 … should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 244 F.R.D. 70, 74 (D. Me. 2007) (denying Rule 11 motion without prejudice to its renewal "if and when [Defendant] obtains summary judgment") (citations omitted); *e.g., Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417-421 (S.D.N.Y. 2003) (discussing that Rule 11 sanctions are not a substitute for motions for summary judgment). *Accord Haaf v. Flagler Construction Equipment, LLC,* No. 10-62321-CIV-WILLIAMS/SELTZER, 2011 WL 13217104 at *2 (S.D. Fla. Nov. 9, 2011).  Indeed, the Rule Advisory Committee for Rule 11 "anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation...." Fed. R. Civ. P. 11

(Advisory Committee Notes, 1983 Amendment); *see also Haaf,* 2011 WL 13217104 at *2 (denying without prejudice motion for Rule 11 sanctions where "Defendant moves the Court to adjudicate the disputed core claims of this litigation in the context of a sanctions motion."); *Global Van Lines, Inc. v. Global Van Lines, Inc.*, N0. 05-61410-CIV-UNGARO-BENAGES/O'SULLIVAN,  2006 WL 8431578 at *3 (S.D. Fla. June 5, 2006) ("Rule 11 sanctions should not be used as a substitute for a motion to dismiss."); *Lichtenstein v. Consolidated Serv. Group, Inc.*, 173 F.3d 17, 23 (1st Cir. 1999) (emphasizing that "[c]ourts should, and often do, defer consideration of certain sanctions motions until the end of [the litigation] to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where [as here] the thrust of the sanctions motion is that institution of the case itself was improper"); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) (denying Rule 11 motion without prejudice "to renewal at conclusion of litigation"); Wright and Miller, Federal Practice and Procedure: Civil 3d § 1337.1 (2004) (when "the challenged conduct is the institution of the action itself ... the question whether there has been a Rule 11 violation generally is not decided until after the litigation is completed, in order to avoid delaying the disposition of the merits of the case.").

Here, Defendant's Motion for Rule 11 Sanctions re-asserts, albeit in purely conclusory fashion, the same arguments against Plaintiff's ADA claim in Count I of the Amended Complaint as Defendant asserted in its yet undecided and contested Motion to Dismiss.  Thus, to the extent this Court decides not to dispose of the Motion for Sanctions on the merits (as it should do because Plaintiff's claims in the Amended Complaint are not patently frivolous), the Motion for Sanctions is at best premature and should be denied without prejudice until after this litigation has completed.

**D. Plaintiff is entitled to recover his reasonable attorney's fees and costs in defending Defendant's baseless Motion pursuant to Rule 11(c)(2).**

"Owing partly to the risk of misuse, Rule 11(c)(2) permits the award of expenses to the party prevailing on the sanctions motion[.]" *Adhikari v. Daoud & Partners*, Civil Action No. 09-cv-1237, 2017 WL 5904782 at *3 (S.D. Tex. Nov. 30, 2017). "If the non-movant prevails, there is no requirement in the rule's text or commentary that the movant's conduct be found worthy of sanction." *Id.* To award fees to the prevailing opponent, "[t]here should be something negative, then, in the losing party's conduct, but it does not have to be so serious that sanctions are appropriate." *Id*. at *8 (citing a variety of cases where prevailing party fees were awarded to a Rule 11 opponent).

Thus, "in cases where the initial movant's Rule 11 motion is denied, a court may issue sanctions against the movant because 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.' The nonmoving party need not file a cross-motion to receive fees as the court can award reasonable expenses to the prevailing party, including attorney's fees, incurred in presenting or opposing the motion." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Specifically, Rule 11(c)(2) provides: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." The 1993 Advisory Committee Notes to Rule 11 further provide that a Rule 11 motion should not "be prepared to emphasize the merits of a party's position ... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 (Advisory Committee Notes, 1993 Amendment). Moreover, an award of reasonable attorney's fees and costs in having to defend against an unsupported or baseless Rule 11 motion can be issued without the court having to determine that the motion was itself frivolous. *See Sarmiento v. Pena*, No. 14-cv-66, 2016 WL 3964808 at *2 (S.D. Tex. July 25, 2016) (awarding fees under Rule

11

11(c)(2) and noting, "[t]he Court need not find that a defendant's motion is frivolous to award reasonable award fees. As the Magistrate Judge found, there does not seem to be a good-faith basis supporting [the] motion. Therefore, [the opponent] should not have to bear the costs of responding." (internal citation omitted)); *Vanliner Ins. Co. v DerMargosian*, No. 12-CV-5074-D, 2014 WL 1632181 at *2 (N.D. Tex. Apr. 24, 2014) ("[A]lthough the [movant's] amended motion need not have been frivolous to warrant a fee award under Rule 11(c)(2), the fact that it was frivolous informs the court's finding that a fee award is warranted. [The opponent] should not have to bear the expense of paying its lawyers to respond to an amended sanctions motion that should never have been filed." (footnote omitted)); *Crawford v. Japan Airlines*, No. 03-00451-LEK-KSC, 2013 WL 2420715 at *9 (D. Haw. May 31, 2013) (awarding fees to Rule 11 opponent pursuant to Rule 11(c)(2) because "Plaintiff failed to comply with the procedural requirements of Rule 11 and … the Plaintiff's Motion is substantively without merit").

Here, Defendant and its counsel have brought a baseless, improper, and ill-advised Motion for Rule 11 Sanctions in which they not only seek to re-argue the merits of the still undecided Motion to Dismiss but also seek to intimidate Plaintiff and his counsel to abandon a case they in good faith believe has both legal and factual merit under the current state of the law and assert unsubstantiated and inflammatory accusations against Plaintiff and his counsel, including making a wholly baseless statement about other cases Plaintiff and his counsel have brought.  Specifically, in paragraph 13 of the Motion, Defendant and his counsel make the following unsupported, spurious accusation against Plaintiff and his counsel, obviously to garner favor with this Court through disparagement:  "NELSON and his counsel have brought the same Worded Complaint against 107 other businesses. ***NELSON and his attorney are continuously bringing frivolous,***

*baseless claims, which needlessly increase the cost of litigation and are brought for an improper purpose.*" Motion for Rule 11 Sanction, ECF No. 20, at p. 4.

That Plaintiff and his counsel have brought other ADA website cases against other companies is irrelevant to whether the instant ADA claim in the Amended Complaint, let alone the separate Rehab Act claim, are objectively frivolous to warrant sanctions. As this Court previously has stated in another Title III ADA case in which the defendant sought to malign the plaintiff and his counsel for bring serial litigation: "The Court is not influenced by the number of lawsuits filed by Plaintiff, *given that he has the right to equal and full access to public accommodation under the ADA and thus is not restricted in the number of lawsuits he brings in asserting those rights*." *Karakis v. GM Rests, Inc.*, No. 08–60291–Civ–DIMITROULEAS, ECF No. 25 at 2, n. 1 (S.D. Fla., May 15, 2008). Thus, the fact that Plaintiff, a visually disabled person, has previously brought multiple ADA website cases against other companies is of no consequence as Plaintiff has a legal right to do so. *See also Campbell v. moon Palace, Inc.,* No. 11–60274–CIV, 2011 WL 3648562 at *5 (S.D. Fla. Aug. 19, 2011) ("[C]ourts have held that the number of ADA cases brought by a particular plaintiff does not demonstrate an improper purpose, wrongdoing, or bad faith."). As one federal district court has cogently recognized:

> The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law. As the Ninth Circuit has noted ..., "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."

*Kittok v. Leslie's Poolmart, Inc.*, 687 F.Supp.2d 953, 959 (C.D. Cal. 2009) (quoting *Evergreen Dynasty Corp*., 500 F.3d 1047, 1062 (9th Cir. 2007)).

Although the number of prior ADA cases brought by Plaintiff and his counsel may arguably be accurate, what makes Defendant's statement in paragraph 13 of the Motion for

Sanctions frivolous and clearly designed for an improper purpose is the second sentence of the paragraph: that all of Plaintiff and his counsel's other cases involve "frivolous, baseless claims, which needlessly increase the cost of litigation and are brought for an improper purpose." Defendant presents no legal or factual support for this outrageous, reckless, and patently false accusation, which are included for the sole purposes of maligning Plaintiff and his counsel to this Court. Defendant and his counsel have absolutely no knowledge as to the merits of Plaintiff and his counsel's other ADA cases, most of which resulted in settlements or consent decrees requiring the defendants to remediate their websites to make them more accessible to the blind and visually disabled. Indeed, courts in other jurisdictions in ADA cases have been quick to admonish defense counsel for employing similarly inflammatory personal attacks against plaintiffs and their counsel. *See, e.g., Kittok,* 687 F.Supp.2d at 957-58 (admonishing defense counsel for describing the disabled plaintiff's other ADA lawsuits as " 'shakedown schemes' for attorney's fees", stating that "plaintiff and her counsel have followed the typical ADA scheme pattern to a tee," and "pointing out previous cases filed by plaintiff. … Not only are these attacks on the scruples and ethics of plaintiff and her counsel inappropriate in tone, they are wholly unsupported in substance."); *Morales v. Ralphs Grocery Co.,* 2012 WL 6087699 at *8 (E.D. Cal. Dec. 6, 2012) (court expressing "concern[]" with defense counsel's "violation of [his] duty of candor" where defense attorney argued that "Plaintiff's counsel belong[ed] to an 'unscrupulous law firm,' and that the lawsuit [was] a 'legal shakedown scheme,' brought for the purposes of extorting money from the defendants' due to the serial nature of Plaintiff and Plaintiff's counsel filing of ADA litigation."); *Sipe v. Am. Casino & Ent. Properties, LLC*, No. 16CV124, 2016 WL 1580349 at *2 (W.D. Pa. Apr. 20, 2016) (in ADA case, court admonishing defense attorney for taking similarly

14

inflammatory actions that "have only succeeded in: (1) harassing Plaintiff's counsel, and (2) possibly making the rights of the blind and visually impaired Plaintiffs more difficult to enforce.").

Here, Defendant and its counsel in their Motion for Rule 11 Sanctions have resorted to similar unsupported, baseless, and disparaging accusations against Plaintiff and his counsel, which evidences the true purpose behind the Motion for Sanctions in the first place: "to intimidate an adversary into withdrawing contentions that are fairly debatable." Fed. R. Civ. P. 11 (Advisory Committee Notes, 1993 Amendment). Thus, it is not Plaintiff's properly filed and legally cognizable Amended Complaint, but rather Defendant and its counsel's present Motion for Rule 11 Sanctions, that has needlessly increased the cost of litigation and is brought for an improper purpose.

Plaintiff's counsel has spent 12.5 hours of attorney time in researching and preparing the instant response to the Motion for Sanctions at an attorney rate of $425 per hour, for a total of $5,312.50. To the extent this Court denies the Motion – and it should – Plaintiff requests that an award of $5,312.50 in fees be awarded per this Court's authority under Rule 11(c)(2).

### III.    Conclusion.

Based on the foregoing, Defendant's Motion is itself frivolous and does not present grounds warranting the imposition of any sanctions against Plaintiff or his counsel pursuant to Fed. R. Civ. P. 11. Alternatively, the Motion is at best premature and improper as it only re-argues grounds already argued and fully briefed in connection with Defendant's still pending Motion to Dismiss the Amended Complaint. As such, if the Court decides not to deny the Motion outright on its merits (as it should because it is baseless), the Court should deny the Motion without prejudice until the conclusion of the case.

In addition, to the extent the Court does deny Defendant's Motion for Sanctions on its merits, Plaintiff requests that he be found the prevailing party and be awarded his reasonable attorney's fees associated with defending Defendant's baseless Motion pursuant to Fed. R. Civ. P. 11(c)(2).

Respectfully submitted,

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By: _s/ Roderick V. Hannah_
RODERICK V. HANNAH
Fla. Bar No. 435384

By: _s/ Pelayo M. Duran_
PELAYO M. DURAN
Fla. Bar No. 0146595

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August, 2021, a true and correct of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below:

Shaina Van Mehren, Esq.
Jamie Sasson, Esq.
THE TICKTIN LAW GROUP
270 SW Natura Avenue
Deerfield Beach, FL 33441
(954) 570-6757
Serv516@legalbrains.com
Serv513@legalbrains.com

*Attorneys for Defendant*

*BRUNO NORTHFLEET, INC.*
*d/b/a NORTHFLEET.*

/s/ *Roderick V. Hannah*
Roderick V. Hannah